DIANE TODARO VORSHECK AND JOHN P. VORSHECK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vorsheck v. Commissioner
Docket No. 16569-92
United States Tax Court
T.C. Memo 1994-281; 1994 Tax Ct. Memo LEXIS 282; 67 T.C.M. (CCH) 3110; June 20, 1994, Filed *282 Decision will be entered for petitioners as to the additions to tax and for respondent as to the claimed overpayment of section 6621(c) interest. Diane Todaro Vorsheck and John P. Vorsheck, pro se. For respondent: Christine V. Olsen. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] *283 Respondent determined additions to tax for petitioners' 1983 taxable year under section 6653(a)(1) [2] in the amount of $ 688.70, under section 6653(a)(2) in the amount of 50 percent of the interest due on the entire understatement, and under section 6661(a) in the amount of $ 4,443.50. In addition, petitioners claim an overpayment of interest assessed under the provisions of section 6621(c). Based on the stipulation of settled issues entered into by the parties on March 11, 1994, wherein respondent conceded the additions to tax under sections 6653(a)(1) and (2) and 6661(a), the sole issue for our decision is whether petitioners made an overpayment of section 6621(c) interest. Some of the facts have been stipulated. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in Laguna Hills, California. This case arises out of an investment made in 1982 [3] by petitioners in a tax shelter known as Western Reserve Oil and Gas Company, Ltd. (hereafter referred to as WROG). WROG was audited for its 1983 taxable year and a Notice of Final Partnership Administrative Adjustment (FPAA) was issued to the partnership. Thereafter, the case was docketed in this Court at docket No. 17441-87. Subsequently, on June 19, 1991, in accordance with the procedures outlined in Rule 248(b), a decision was entered by this Court in docket No. 17441-87, sustaining respondent's adjustment of partnership items in the FPAA. Following the entry of the decision in *284 docket No. 17441-87, computational adjustments were made by respondent to petitioners' 1983 tax return, and a notice of deficiency was issued to petitioners for the "affected items" additions to tax at issue herein. *285 In , we considered the allowability of deductions and credits attributable to investments in WROG. The following summarizes the facts found therein. In 1982, Trevor Phillips (Phillips) and Terry Mabile (Mabile) created an investment device known as WROG, which was designed to be marketed as an oil and gas tax shelter. A corporation called Magna, primarily owned by Mabile, acquired rights to some potential oil and gas properties, which were then subleased to WROG for alleged minimum annual royalties. The subleases were secured by alleged recourse promissory notes. The promissory notes were assumed by the limited partners in order to have sufficient bases against which deductions for the royalties and other drilling expenses could be passed through by WROG, an accrual basis partnership, and taken as deductions by the cash basis limited partners. WROG was marketed to potential investors as a tax shelter, promising tax writeoffs of four times the investor's cash investment. However, the structure of the deal was such that the promoters received most of the cash investment, little drilling was done, and *286 there was no realistic potential for recovery of the cash investment by the investor, much less any potential for profits. In , the Court held that WROG was not engaged in a trade or business within the meaning of section 162(a) and that the whole partnership arrangement lacked economic substance. Therefore, most of the deductions claimed by the partnership which passed through the partnership to the partner-investors were not allowable. We further held that the taxpayers therein were liable for the additions to tax under sections 6653(a)(1) and (2) and 6661, and that they were also liable for the additional interest imposed by section 6621(c). However, in an oral opinion of this Court dated February 12, 1990, dealing with petitioners' 1982 tax year, we determined that petitioners, in investing in WROG, "acted as ordinary and prudent persons under the circumstances" and that they were not liable for the additions to tax for negligence. Notwithstanding our finding that petitioners were not negligent, we also held that petitioners were liable for the addition to tax under section 6661(a). Subsequently, petitioners *287 appealed the case involving their 1982 tax year to the Court of Appeals for the Ninth Circuit. The Court of Appeals, in , affg. in part and revg. in part an Oral Opinion of this Court dated February 12, 1990, [4] stated: In , (1988), the tax court found that WROG did not have a profit motive, did not engage in a trade or business, and was carried on to enrich its organizers and offer investors a tax shelter. . The law in the Ninth Circuit is well settled that profit motive is determined at the partnership level. See Polakof, 820 F.2d at 323. Although the Vorshecks may have invested in WROG with the intent of realizing a profit, they are bound by the motive of the partnership, as determined in Ferrell. Thus, the tax court correctly decided that the Vorshecks failed to distinguish their case from Ferrell. * * *
*288 In petitioners' amendment to petition, petitioners contend that they made an overpayment of section 6621(c) interest for 1983. [5] Petitioners allege that the assessment of section 6621(c) interest was improper because the underpayment of tax on which the increased interest was assessed was not attributable to a tax motivated transaction. Petitioners argue that , revg. , supports their contention that they are not liable for increased interest under section 6621(c). There is no dispute that petitioners paid the increased interest under section 6621(c). *289 Section 6621(c) provides for an increased interest rate with respect to any "substantial underpayment" (greater than $ 1,000) in any taxable year "attributable to 1 or more tax motivated transactions". The increased rate of interest applies as of December 31, 1984, even though the transaction was entered into prior to the enactment of the statute. , affd. without published opinion . The term "tax motivated transaction" includes any "sham or fraudulent transaction". Sec. 6621(c)(3)(A)(v). The statutory language encompasses transactions which lack profit objective and which are without economic substance. . As stated by the Court of Appeals for the Ninth Circuit in , it is well settled that profit motive is determined at the partnership level. See , affg. . Therefore, *290 petitioners are bound by the motives of the partnership as determined in ; i.e., that WROG did not have a profit motive. Petitioners' profit motive is irrelevant. Moreover, Ferrell held that the WROG transactions were shams within the meaning of section 6621(c)(3)(A)(v). Petitioners have failed to establish otherwise. Petitioners reliance on Heasley is misplaced. Petitioners contend that Heasley stands for the proposition that section 6621 interest cannot be imposed when a taxpayer has been found to have a profit motive. However, even if petitioner's did have a profit motive, we do not read Heasley to stand for this proposition. See . Congress amended section 6621(c)(3)(A) in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1535(a), 100 Stat. 2750, to include any sham or fraudulent transaction as a "tax motivated transaction". Sec. 6621(c)(3)(A)(v). Section 6621(c)(3)(A), as amended to include sham transactions among the list of tax motivated transactions applies in this case. This provision, however, was not *291 discussed in See . When a transaction is the simple product of smoke and mirrors, it is a factual sham, regardless of whether the taxpayer may have thought that a profit might have been made. ; This is all section 6621(c)(3)(A)(v) requires. See Statement of the Managers attached to the conference report, H. Conf. Rept. 99-841, at II-796 (1986). Accordingly, the increased rate of interest applies to the underpayment attributable to all deductions taken with respect to the WROG program. Thus, petitioners have not made an overpayment of section 6621(c) interest for 1983. To reflect the foregoing, Decision will be entered for petitioners as to the additions to tax and for respondent as to the claimed overpayment of section 6621(c) interest.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency, respondent erroneously determined additions to tax under sec. 6653(a)(1)(A) and (B). The applicable negligence section for 1983 is sec. 6653(a)(1) and (2).↩
3. At trial, it was not clear whether petitioners' 1983 deficiency was attributable to an additional investment made in 1983 by petitioners in either Western Reserve Oil and Gas, Ltd. or an entity known as 1983 Western Reserve Oil and Gas, Ltd., or, rather, was attributable to petitioners' initial 1982 investment that was addressed in Vorsheck v. Commissioner↩, an Oral Opinion of this Court dated February 12, 1990, affd. in part and revd. in part . The Court left the record open for 30 days with respect to this matter. Subsequently, the parties filed a supplemental stipulation of facts which clarified the fact that the only investment made by petitioners in WROG was the initial 1982 investment. Petitioner Diana Todaro Vorsheck then filed a motion to supplement the record to add a myriad of documents not previously discussed during the stipulation process and not available at trial. Respondent objected on the ground of untimeliness and we agree. Therefore, the motion will be denied. Even if we granted the motion, however, the documents presented would not require a different result on the issue presented.
4. The Court of Appeals affirmed the portion of our decision upholding the Commissioner's determination of a $ 10,910 deficiency for petitioners' 1982 tax year and reversed the portion of our decision upholding the Commissioner's determination of the addition to tax under section 6661(a). The applicability of section 6621(c) was not involved in the 1982 tax year case.↩
5. The applicability of sec. 6621(c) was not, and could not have been, resolved in the partnership proceedings. See . However, in , the Court held that we have jurisdiction to determine whether an overpayment of sec. 6621(c) interest exists and the amount of any such overpayment. Thus, we will determine whether petitioners are liable for the increased interest under sec. 6621(c).↩